DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant Alexander Martinsons ("Alex") appeals his conviction and sentence in the Medina County Court of Common Pleas. The state of Ohio cross-appeals. We affirm in part and reverse in part.
On May 9, 1996, federal and local law enforcement officers conducted a search of the home of Alex's parents in Wadsworth, Ohio. Alex was staying in one basement bedroom while his brother Hugo lived in the other. Just prior to beginning the search, law enforcement agents encountered Alex outside the house. Two shotguns, or "long guns," as Alex referred to them, were recovered from a closet located in a bathroom accessible only through Hugo's bedroom. The guns had been standing in the back of the small closet, behind Hugo's clothes.
Alex was indicted for having a weapon under a disability, in violation of R.C. 2923.13. Alex's disability arose from a 1989 drug conviction in Illinois. After a jury trial, begun on March 18, 1997, Martinsons was found guilty. On April 28, 1997, Martinsons was sentenced to a term of imprisonment. The trial court found that Martinsons' offense is non-probational.
Upon searching the Martinsons' home, authorities seized more than five hundred musical instruments, which had been stacked, stuck, and stuffed in crannies throughout the house and garage. Alex described musical instruments as his "love of life," and testified that his sole occupation was the buying, selling, and repairing of musical instruments. Police also seized a Wells Fargo trailer, a briefcase, a portable telephone, Alex's passport, a video camera, video tapes, coins, personal effects of Alex's from his tour of duty in Vietnam, a stamp collection, and $9,250 in cash. Upon motions by Alex, the instruments, trailer, video camera, and video tapes were returned to him.
On April 4, 1997, the state moved for the forfeiture of all property it continued to hold as well as the trailer it had returned to Alex. The trial court denied the state's motion. Alex appeals, assigning eight errors.
 I.
Alex's first assignment of error states:
 THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR DISCHARGE FOR VIOLATION OF APPELLANT'S SPEEDY TRIAL RIGHTS UNDER R.C. 2945.71 ET SEQ.
R.C. 2945.71(C) provides:
A person against whom a charge of felony is pending:
* * *.
 (2) Shall be brought to trial within two hundred seventy days after his arrest.
Alex asserts: 1) that he was arrested on July 24, 1996; 2) that he spent eighteen days in jail; and 3) that, for purposes of computing speedy trial time, two hundred seventy three days passed before the beginning of the trial on March 18, 1997.
Speedy trial time begins to run the day after the date of arrest. State v. Steiner (1991), 71 Ohio App.3d 249, 250-51. Two hundred thirty-six days elapsed from July 25, 1996 to March 18, 1997. For purposes of computing speedy trial time, each day an accused is held in jail in lieu of bail on the pending charge or charges is counted as three. R.C. 2945.71(E). Crediting Alex for the eighteen days he asserts that he spent in jail brings his grand total of speedy trial days to two hundred seventy two.
The speedy trial time limit, however, is extended for "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H). It is incumbent upon the accused to specify the facts and circumstances showing the continuance to be unreasonable. See, e.g., Aurora v. Patrick
(1980), 61 Ohio St.2d 107, 109. On October 9, 1996, the state moved for a continuance because the detective who did the fingerprint identification comparison would not be available on the week of the trial, then scheduled to begin on October 22, 1996. The trial court granted the motion, continuing the trial to November 5, 1996. The postponement of Alex's trial from October 22, 1996 to November 5, 1996, was caused by the unavailability of a witness necessary for the State's case. "The unavailability of a key prosecution witness is a reasonable ground for granting a continuance pursuant to R.C. 2945.72(H)." City of Wadsworth v.Robinson (October 26, 1994), Medina App. No. 2320-M, unreported, at 5. That continuance, therefore, extended the time within which defendant was required to be brought to trial. The delay caused by the reasonable continuance granted the State because of the unavailability of its witnesses amounted to thirteen days. Having had thus two hundred eighty-three days in which to bring Alex to trial, and accomplishing the feat in two hundred seventy-two, the state complied with the time limit set forth in R.C. 2945.71, as extended by R.C. 2945.72(H). Alex's first assignment of error is overruled.
 II.
Alex's second assignment of error states:
 THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTIONS FOR ACQUITTAL MADE PURSUANT TO CRIM.R. 29 BECAUSE THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO CONVICT HIM OF HAVING WEAPONS WHILE UNDER DISABILITY.
Alex argues that the state presented insufficient evidence to prove that he had a weapon within the meaning of R.C. 2923.13(A). We disagree.
The test for "insufficient evidence" requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. SeeJackson v. Virginia (1979), 443 U.S. 307, 319, 61 L.Ed.2d 560,573; State v. Jamison (1990), 49 Ohio St.3d 182, 191, certiorari denied (1990), 495 U.S. 881, 112 L.Ed.2d 183; State v. Eley
(1978), 56 Ohio St.2d 169, syllabus. "Sufficiency of evidence" is a term of art meaning the legal standard which is applied to determine whether the case may go to the jury or support the jury verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. "In essence, sufficiency is a test of adequacy." Id.
R.C. 2923.13(A)(2) defines the crime of having a weapon while under disability as: "knowingly acquir[ing], hav[ing], carry[ing], or us[ing] any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence." Alex does not dispute the facts that he was under disability and that the long guns in question are firearms. Alex challenges the evidence supporting the finding that he "had" a firearm. In order to "have" a firearm within the meaning of R.C. 2923.13, a person must actually or constructively possess it. State v. Hardy (1978), 60 Ohio App.2d 325, 327. "`Actual possession requires ownership and, or, physical control.'" State v. Messer (1995), 107 Ohio App.3d 51, 56, quoting Hardy, supra at 327.
At trial, the following testimony was elicited by the state from Charles Turner, Special Agent for the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF"), who had accompanied local police officers in searching the home of Martinsons' parents:
 Q. Did you have any conversations with Alex on May 9, 1996?
A. Yes, I did.
Q. And what were those conversations?
 A. First time I spoke with him, I asked if any of the jewelry inside the residence was his, and he said it was not.
 Then I asked him if any of the firearms in the residence were his, and he said that he had a long gun in the basement in his bedroom.
Turner's testimony was sufficient to prove that Martinsons admitted owning one of the long guns in the basement. In other testimony, Martinsons admitted to knowing of the existence of two old long guns that had been in the house since the 1960s. The long guns recovered from the basement bathroom closet answer to Alex's description of the guns with which he was familiar. That the gun was two rooms away from where he thought it was does not disturb the sufficiency of the evidence for the conclusion that Alex owned the weapon, and hence "had" the weapon within the meaning of R.C. 2923.13(A). Alex's second assignment of error is overruled.
 III.
Alex's third assignment of error states:
 THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340; see also State v. Johnson (1995), 107 Ohio App.3d 723, 726. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." Thompkins,supra, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42,72 L.Ed.2d 652, 661. "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins,supra, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Alex presented evidence that Hugo was prosecuted by the federal government for having the long guns. However, as the trial court correctly instructed the jury, two persons can each have possession of a firearm. It is possible, for example, that Alex actually possessed — by ownership — one long gun while Hugo constructively possessed[1] the same long gun.
Alex also points out that: 1) the guns were stored in a bathroom accessible only through Hugo's bedroom; 2) Alex stored his possessions all over the house but not in Hugo's room; 3) the ammunition for the long guns was stored in a bottom drawer of a dresser in Hugo's room; and 4) Alex testified that he did not own either of the long guns. However, the jury was also able to observe the demeanor of Alex and Turner as they testified. The jury reasonably found Alex's testimony less credible than Turner's testimony that Alex admitted ownership of a gun. We do not believe that this assessment resulted in a "manifest miscarriage of justice," and we cannot, therefore, say that the jury's verdict was against the manifest weight of the evidence. See State v.O'Dell (Sept. 3, 1997), Lorain App. No. 96CA006451, unreported, at 7; State v. Williams (Nov. 6, 1996) Summit App. No. 17598, unreported, at 6. Alex's third assignment of error is overruled.
 IV.
Alex's fourth assignment of error states:
 THE TRIAL COURT ERRED BY NOT PERMITTING THE APPELLANT TO INTRODUCE EVIDENCE THAT HUGO MARTINSONS PLEAD [sic] GUILTY TO POSSESSING THE SHOTGUNS WHICH UNDERLIE APPELLANT'S CONVICTIONS.
The trial court denied Alex's attempts to introduce into evidence Hugo's plea agreement with federal authorities and testimony by Agent Turner that he saw Hugo plead guilty to possession of both long guns. By showing that Hugo admitted to possessing the guns, Alex hoped to disprove that Alex possessed the guns. Alex concedes that these statements are hearsay, but argues that they should have been admitted as exceptions to the rule barring hearsay.[2]
Alex contends that both statements should have been admitted pursuant to Evid.R. 803(3), which provides that the following sorts of statements are not barred by the hearsay rule:
 A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed[.]
Alex argues that Hugo's plea agreement and his plea of guilty in court showed Hugo's existing state of mind, i.e., that he was guilty of the offense. We disagree. Hugo stated memory or belief — that he had possessed guns in violation of the law — which Alex sought to use to prove the fact remembered or believed. Hence Hugo's statements are not entitled to exception from the hearsay rule on the basis urged.
Alex also maintains that Hugo's plea agreement should have been admitted pursuant to Evid.R. 803(8), which provides that the following is not excluded by the hearsay rule:
 Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers, and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.
It is possible that the trial court erred by failing to admit Hugo's plea agreement under this exception to the hearsay rule. However, as discussed above, the trial court correctly instructed the jury that two persons can each have possession of a firearm. Furthermore, evidence that Hugo was charged by federal authorities with possessing the guns was placed before the jury. Any error committed in excluding Hugo's plea agreement was harmless. Alex's fourth assignment of error is overruled.
 V.
Martinsons' fifth assignment of error states:
 THE TRIAL COURT ERRED BY PERMITTING THE STATE OVER APPELLANT'S OBJECTION TO INTRODUCE INTO EVIDENCE TWO (2) OTHER GUNS AND AMMUNITION FOUND IN APPELLANT'S PARENTS' HOME.
The trial court permitted the state to introduce into evidence two guns, other than those underlying the charge against Alex, that were found in the Martinsons home. A Higgins .22 caliber pistol was found in a box in the garage and a Baretta .22 caliber gun was found in the bedroom of Alex's parents on the first floor. Ammunition found near the guns was also introduced into evidence. Alex objected to the admission of these items into evidence.
Alex argues that inclusion of these items violated Evid.R. 402, which provides that irrelevant evidence is not admissible. Even if relevant, Alex continues, this evidence's probative value was substantially outweighed by the danger of unfair prejudice, and its inclusion over his objection therefore violated Evid.R. 403.[3] Admission of this evidence harmed Alex because it encouraged the jury to conclude "that Alexander had other weapons or that he and his family were weapon crazy . . . [or] that if Alexander was not guilty of possessing the shotgun, he was guilty because he possessed other guns."
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. A reviewing court should not reject the trial court's exercise of this discretion unless: (1) it has clearly been abused, and (2) the defendant has suffered material prejudice as a result. State v.Long (1978), 53 Ohio St.2d 91, 98. Evid.R. 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
Assuming, arguendo, that the .22 caliber guns were erroneously admitted, any such error would have been harmless. "Where evidence has been improperly admitted * * *, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt." Statev. Williams (1983), 6 Ohio St.3d 281, 290, certiorari denied,464 U.S. 1020, 78 L.ed.2d 727, citing Harrington v. California (1969),395 U.S. 250, 254, 23 L.Ed.2d 284, 287. As discussed above, there was evidence that Alex admitted owning one of the long guns. Further, at the time this evidence was admitted, the trial court had the prosecutor clarify for the jury that the .22 pistol was not related to the charge against Alex. The court then cautioned the jury that the only firearms the state contended that Alex had were the two long guns. Alex's fifth assignment of error is overruled.
 VI.
Alex's sixth assignment of error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR BY PERMITTING THE STATE TO ASK THE APPELLANT WHETHER HE FILED TAX RETURNS, HOW MUCH MONEY HE MADE AND HOW HE PAID FOR TRAVEL EXPENSES.
Alex argues that the following inquiries of him by the prosecutor on cross-examination were irrelevant and highly prejudicial, and that the trial court plainly erred in permitting them: how much money Alex made in 1995 and 1996; how Alex paid travel expenses; and whether Alex filed income tax returns.
Alex did not object to the prosecutor's questions. Alex's failure to object waived all but plain error, pursuant to Crim.R. 52(B)[4] from the admission of the testimony. State v. Davie
(1997), 80 Ohio St.3d 311, 322. To show plain error, Alex must demonstrate "that the trial's outcome would clearly have been different but for the alleged errors." State v. Campbell (1994),69 Ohio St.3d 38, 49, certiorari denied, 513 U.S. 913,130 L.Ed.2d 204. The Ohio Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly: "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
Under Evid.R. 608, "[s]pecific instances of the conduct of the witness, for the purpose of attacking or supporting the witness's character for truthfulness, * * * may, * * * in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness * * * concerning the witness's character for truthfulness or untruthfulness." The trial court's rulings concerning such questioning are governed by the abuse of discretion standard.State v. Reed (1996), 110 Ohio St.3d 749, 753-754. The term "abuse of discretion" implies that the court's ruling was "unreasonable, arbitrary, or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157.
On direct examination, Alex testified that he was an itinerant buyer, seller, and repairer of musical instruments, who traveled frequently, from coast to coast. Alex also testified that he sought the return of currency seized by the government in its raid on the house. On cross-examination, the prosecutor asked Alex how much money of his was seized (over $9,000 in cash) and how much money Alex had made in 1995 and the first part of 1996 (up to $6,500). Since the former figure was much higher than the latter, these questions tended to impeach Alex's credibility. The prosecutor's questions about how Alex paid his travel expenses, given Alex's low income, tended to have the same effect. There was nothing improper about the prosecutor's examination of the truthfulness of the testimony Alex had given on direct examination.
Alex also introduced evidence that he resided in California, presumably to show that he did not reside in his parents' Ohio home, where the guns were located. On cross-examination, along with other questions concerning Alex's residency, the prosecutor asked Alex where he filed his income tax returns. Alex then revealed that he had not been filing income tax returns, had not filed income returns for 1995 and 1996, and indeed had not filed a return since the 1970s. The prosecutor's questions concerned specific instances of Alex's conduct, and were clearly probative of Alex's character for truthfulness, were clearly permissible under Evid.R. 608(B). Alex's sixth assignment of error is overruled.
 VII.
Alex's seventh assignment of error states:
 THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO QUESTIONS REGARDING WHETHER APPELLANT FILED TAX RETURNS, HOW MUCH MONEY HE MADE AND HOW MUCH HE PAID IN TRAVEL EXPENSES.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.
State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, vacated in part on other grounds (1978), 438 U.S. 910, 57 L.Ed.2d 1154; State v.Miller (1988), 43 Ohio App.3d 44, 45. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy. Strickland v.Washington (1984), 466 U.S. 668, 689, 80 L.Ed.2d 674, 694-695. Our discussion of Alex's sixth assignment of error indicates that in failing to object to the inquiries at issue Alex's counsel neither substantially violated any of his essential duties to Alex nor harmed Alex's defense. Alex's seventh assignment of error is overruled.
 VIII.
Alex's eighth assignment of error states:
 THE TRIAL COURT ERRED BY FINDING APPELLANT INELIGIBLE FOR PROBATION.
The trial court ruled that the offense for which Alex was convicted, having weapons under a disability, in violation of R.C.2923.13, is non-probationable, and then sentenced Alex to six months imprisonment. R.C. 2951.02 (F) provides that:
 An offender shall not be placed on probation * * * when any of the following applies:
* * *
 (3) The offense involved was not a violation of section 2923.12 of the Revised Code and was committed while the offender was armed with a firearm or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
The question is whether one who has a weapon while under a disability. i.e., one who possessed a weapon as discussed above under assignments of error two and three, is "armed" within the meaning of R.C. 2951.02(F)(3). We conclude that ordinarily the answer would be "yes," but where, as here, the defendant lacks immediate access to the weapon, possessing it solely by virtue of his or her ownership thereof, the defendant is not armed.
Discussing R.C. 2951.02(F)(3), the Supreme Court of Ohio quoted Webster's Third New International Dictionary (unabridged) in stating the usual and ordinary meaning of "armed" to be: "`furnished with weapons of offense or defense: FORTIFIED, EQUIPPED.'" State v. Carter (1983), 3 Ohio St.3d 15, 16. In Statev. Butler (1989), 42 Ohio St.3d 174, 176, the Ohio Supreme Court found that constructive possession of a weapon — in the sense of "immediate access" to it — was sufficient to constitute being "armed" within the meaning of R.C. 2951.01(F)(3).[5] Mere ownership of a dangerous ordnance does not necessarily mean that a person is armed within the meaning of R.C. 2951.02(F)(3). Statev. Roberts (1986), 33 Ohio App.3d 201, 204 (a sawed-off shotgun was found under a mattress during a search of a mobile home occupied by the defendant). A defendant lacking immediate access to his weapon is not "armed" within the meaning of R.C.2951.02(F)(3). State v. Gabriel (Dec. 28, 1994), Mahoning App. Nos. 92 CA 114 93 CA 5, unreported (during search of home, a gun was found where defendant told police it would be: upstairs in his bedroom dresser drawer). In the present case, the state presented no evidence that Alex had immediate access to the long gun of which he claimed ownership. Lacking evidence that Alex was "armed" within the meaning of R.C. 2951.02(F)(3), the trial court erred in finding Alex's offense non-probationable. Alex's eighth assignment of error is sustained.
 IX.
The state's cross-assignment of error states:
 THE COURT ERRED AS A MATTER OF LAW IN DENYING THE STATE'S MOTION FOR FORFEITURE IN THREE WAYS: (A) DOUBLE JEOPARDY DOES NOT APPLY; (B) THE FORFEITURE MOTION WAS TIMELY FILED; AND (C) THE COURT SHOULD HAVE CONSIDERED THE EVIDENCE AT TRIAL AND WHETHER UNDER THE CIRCUMSTANCES THE DEFINITION OF CONTRABAND APPLIED UNDER THE REVISED CODE 2901.01(M)(2)(8) OF (9).
After Alex's conviction and prior to his sentencing, the state moved for an order of forfeiture "of all property belong to [Alex] seized and held by the Wadsworth City Police Department and also for forfeiture of a trailer returned to the defendant." The trial court denied the motion and ordered all property held by the police to be returned to Alex.
R.C. 2933.43 sets forth the procedure for forfeiture of contraband. "Contraband" is defined at R.C. 2901.01(A)(13) as any of the following:
 (b) Property that is not in and of itself unlawful for a person to acquire or possess, but that has been determined by a court of this state, in accordance with law, to be contraband because of its use in an unlawful activity or manner, of its nature, or of the circumstances of the person who acquires or possesses it[;]
* * *
 (h) Any personal property that has been, is being, or is intended to be used in an attempt or conspiracy to commit, or in the commission of, any offense or in the transportation of the fruits of any offense;
 (i) Any property that is acquired through the sale or other transfer of contraband * * *, other than by a court or a law enforcement agency acting within the scope of its duties[.]
To demonstrate that items are contraband, the state must show "that it is more probable than not, from all the circumstances, that the defendant used the items in the commission of criminal offenses." State v. Golston (1990), 66 Ohio App.3d 423, 432. InState v. Roberts (1995), 102 Ohio App.3d 514, 518, this court stated the following with respect to forfeiture actions:
 A forfeiture action, while instituted as a criminal penalty, is a civil proceeding. Forfeitures are not favored in law or in equity. Statutes imposing forfeiture must be strictly construed; where possible, forfeiture should be avoided. In a forfeiture proceeding, the state bears the burden of proving, by a preponderance of the evidence, that seized property is contraband.
(Citations omitted.) See, also, R.C. 2933.42(A) R.C.2933.43(C).
The state argues that the cash and other property Alex claimed were his "were intermingled with criminal tools and contraband acquired and possessed by his brother, Hugo Martinsons as the fruit of multiple theft-related offenses." The state has not demonstrated the commingling it asserts. Before the trial court the state argued that the portable phone, coins, stamp collection "and other miscellaneous personal items" should be considered commingled with other contraband because: 1) Alex produced no receipts for the property; and 2) "[i]tems of a similar nature were seized in other parts of the house and have been forfeited to the State as part of the disposition in defendant brother's case." Neither fact is very persuasive, especially in light of the fact that, with the exception of the phone, each item Alex claims as his own was removed from his bedroom.
Though not seemingly included in the scope of the forfeiture request, Alex's musical instruments are discussed as follows in the state's motion before the trial court:
 In retrospect, the State believes this collection was illegally obtained, although the State cannot prove these instruments were stolen, defendant cannot explain how he came to own this valuable collection.
The state's belief, in the absence of any proof, does not carry the burden of persuasion. See Roberts, supra, citing State v.Lilliock (1982), 70 Ohio St.2d 23, 27 (mere possession of cash is not unlawful).
The state's other argument is that since Alex does not have a legitimate income sufficient to account for his ownership of the items seized, the items should be forfeited to the state as contraband. To repeat, to demonstrate that the items involved, which are of an innocuous nature, are contraband, the state must show "that it is more probable than not, from all the circumstances, that the defendant used the items in the commission of criminal offenses." State v. Golston (1990), 66 Ohio App.3d 423,432. The state has not discussed what criminal offenses Alex is supposed to have been using these items to commit. The state's cross-assignment of error is overruled.
The judgment of the trial court is affirmed in part. We reverse only for resentencing in light of Alex's eligibility for probation.
Judgment affirmed in part, reversed in part, and causeremanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Medina Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 Exceptions. _________________________________ WILLIAM R. BAIRD, FOR THE COURT
DICKINSON, J., CONCURS
SLABY, P. J., CONCURS IN JUDGMENT ONLY
[1] "`Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession.' * * * Constructive possession may also be achieved by means of an agent." (Citations omitted.) State v.Messer (1995), 107 Ohio App.3d 51, 56.
[2] "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.
[3] Alex also argues on appeal that admission of this evidence violates Evid.R. 404(B), which, under certain circumstances, proscribes evidence of other crimes, wrong, or acts. Because Alex failed to object on this basis in the trial court, he has waived all but plain error, State v. Loza
(1994), 71 Ohio St.3d 61, 75, certiorari denied (1995),514 U.S. 1120, 131 L.Ed.2d 871, which we do not find.
[4] Crim.R. 52(B) states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
[5] The defendant in Butler had a sawed-off shotgun on the front seat of his car as he was attempting to enter the car.42 Ohio St.3d at 174.