THE STATE OF OHIO, APPELLEE, *v.* HARDY, APPELLANT.

[Cite as State v. Hardy (1978), 60 Ohio App. 2d 325.]

(No. 37761—Decided December 21, 1978.)

*Mr. John T. Corrigan,* for appellee.
*Messrs. Adrine & Adrine,* for appellant.

JACKSON, J. On December 15, 1976, the defendant-appellant, Sylvester Hardy, was indicted by a Cuyahoga County grand jury. He was charged with having a weapon while under disability, in violation of R. C. 2923.13. Defendant entered a plea of not guilty, waived his right to a jury trial, and proceeded to trial before the Court.

The facts which form the basis of the charge are not in dispute and may be summarized as follows:

The defendant had a prior conviction for a drug related offense. Consequently, he was prohibited by provisions of R. C. 2923.13 from knowingly acquiring, having, carrying or using a firearm or dangerous ordnance.

On November 22, 1976, the defendant was working in a beverage store located at 3079 East 123rd Street in Cleveland, Ohio. The beverage store was owned by the wife of the defendant. An employee, George Winfield, who had not been in to work for the previous two days, entered the

premises and approached the defendant. He told the defendant that he had been forced to leave his sister's home where he had been living, and that he needed some money to pay the rent at a rooming house. Defendant told him payday was Saturday, but agreed to give him some money, if he returned at closing time.

Winfield responded that he needed the money immediately, and proceeded to help himself to money in the cash box. When defendant objected, Winfield grabbed for a rifle located at the corner of the counter; defendant also grabbed for the gun [1] and was able to snatch it away from Winfield. In so doing, defendant fell back against a wall. He saw Winfield grab a razor, which the defendant had been using to cut price tags, and leap over the counter which separated the two men. Defendant then fired the rifle twice at Winfield, wounding him. After taking Winfield to a hospital, defendant called the police.

Defendant was subsequently charged as having "***knowingly acquired, had, carried or used a firearm***" while under disability.

The trial judge found defendant guilty of "having" a firearm while under disability, specifically noting for the record that by his "reading of the statute," self-defense was not a defense under the provisions of R. C. 2923.13.

Defendant was sentenced to a term of six months to five years and a fine of $500. Imposition of sentence was stayed by the trial court pending appeal.

On appeal the defendant-appellant assigns a single error for review by this Court:

"The trial court erred in finding the defendant-appellant guilty of violating Ohio Revised Code Section 2923.13 when the weapon involved did not belong to the defendant-appellant and was used solely for the purpose of self-defense, in the exercise of his rights under the United States and Ohio Constitution."

The legal issue before this Court is actually two-fold: first, whether or not the appellant did "have" the weapon within the meaning of the statute at any point in time prior to

---

[1] The record reveals that appellant was aware that the rifle was loaded and ready to be discharged.

the incident which resulted in the shooting of Winfield; and, second, assuming appellant did "have" the weapon at the moment he fired it, whether or not self-defense is a valid defense premised upon the undisputed facts of this case.

Initially we must consider the meaning of the word "have" as used in R. C. 2923.13. The word is a new addition to the disability statute enacted in 1974, and has not yet been judicially interpreted. [2]

In order to "have" a firearm, one must either *actually* or *constructively* possess it. Actual possession requires ownership and, or, physical control. Constructive possession may be achieved by means of an agent.

The facts in the case at bar demonstrate only that appellant, along with other employees, had knowledge of and physical access to a loaded rifle. The record fails to disclose any evidence demonstrating that appellant ever exercised dominion or the sort of control over the weapon that comes with ownership or actual possession. Nor was there a showing that the unidentified owner had ever given appellant permission to use the weapon. [3]

If, however, the state had gone further and presented

---

[2] The statute under which appellant was charged was effective in 1974. It differs in part from the predecessor statute in that in place of the prior language which declared that a prescribed class of persons could not "purchase, own, possess, receive, carry, control or use any firearm" (*see* former R. C. 2923.56), it substituted language which stated that certain persons may not "knowingly acquire, have, carry or use any firearm."

The terminology "carry" and "use" are retained. The word "acquire" appears to be equivalent to the words "purchase" and "receive;" and where the words "own," "possess" and "control" have been deleted from the current statute, the word "have" has been substituted.

[3] The record does not contain any direct evidence of ownership, possession or control of the weapon by the appellant. The extent of the circumstantial evidence is contained in a statement made by appellant to the police in which he admitted knowledge that the rifle was "always ready to fire." This evidence, however, is insufficient on which to base a finding that the weapon was actually or constructively possessed by the appellant. There are other reasonable explanations for knowledge concerning the readiness of the rifle for firing; *e.g.*, he could have been informed of this fact by the store owner, or he may have seen the owner or other employees use the weapon.

It may well be that if further evidence had been adduced, the prosecutor could have developed a case establishing that appellant "had" the weapon. However, with the record in this posture, such a conclusion is not the only reasonable inference which could be drawn.

evidence to establish, for example, that the owner of the beverage store (the wife of appellant) had obtained the gun at the direction of appellant or at his request so that her possession of the weapon could be construed as a mere subterfuge, the evidence would tend to be supportive of the conviction. However, in the case at bar, where the only evidence is that appellant, along with other employees, had physical access to the rifle, this Court is persuaded that such evidence does not support a finding that appellant did "have" the firearm within the meaning of R. C. 2923.13 prior to November 22, 1976.

Next we consider whether the defendant-appellant did "have" the weapon within the meaning of the statute at the moment he fired the gun at Winfield. As a matter of logic, in order to use the weapon, appellant was required to at least temporarily possess or temporarily "have" the weapon in his possession. It must be a fact that anyone who uses a weapon must be considered to "have" it, if only momentarily, although when one has a weapon, he need not necessarily use it.

We conclude, therefore, that the moment at which appellant fired the gun, he technically came within the meaning of the term "have" as used in the statute. Consequently, we are faced squarely with the question of whether the state may by law prohibit an individual under disability from utilizing an available firearm or dangerous ordnance in self-defense, when confronted with an overt physical threat or assault on his person by another individual with a deadly weapon.

Ohio courts have generally recognized that self-defense is a "right" to which the people are entitled. [4] Indeed, our courts are bound to so conclude in view of the provisions of both the Ohio and United States Constitutions. Given this important and constitutional basis for the right of self-defense, our response to this question must be in the negative. Section 1, Article I, of the Ohio Constitution, provides in part:

---

[4] *See, e.g., State* v. *Melchior* (1978), 56 Ohio St. 2c 15, 21; *State* v. *Champion* (1924), 109 Ohio St. 281, 284; and *State* v. *Nieto* (1920), 101 Ohio St. 407 (Wanamaker, J. dissenting). *See also Rutherford* v. *M'Faddon* (S. Ct. 1807), reported in E. Pollack, Ohio Unreported Decisions prior to 1823 (Allen Smith Co.), which explains that the Ohio Constitution of 1802, as well as that of 1851, protected the right of the people to self-defense.

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life***and seeking and obtaining***safety."

The Fifth and Fourteenth Amendments to the United States Constitution provide that a person may not be deprived of his life, liberty or property without due process of law. Obviously, the state may not require and does not intend that an individual succumb to his attacker and possibly forfeit his life rather than act in self-defense. Given this important and constitutional basis for the right of self-defense, our response to this question must be in the negative.

Having previously concluded that the accused did not "have" the rifle within the meaning of the disability statute before the incident occurring on November 22, 1976, we now further conclude that his act of firing the gun in protecting the property of his employer and in defense of his person is neither a crime nor an unlawful act. We are not persuaded that it was the intent of the General Assembly in the enactment of R. C. 2923.13 to achieve such a result, nor is it possible for provisions of a statute to overcome the constitutional protection of the right to defense of self in this manner. [5]

Provisions of R. C. 2923.13 prohibit an individual from *"knowingly"* having or using a firearm. A legitimate act of self-defense is much more a mere reflex action than one committed voluntarily. As the United States Supreme Court declared more than a half century ago: "Detached reflection cannot be demanded in the presence of an uplifted knife." *Brown* v. *United States* (1921), 256 U. S. 335, 343.

The California Supreme Court has recently reached a similar conclusion on this issue in a case analogous to the case at bar. A California statute prohibits a felon from possessing a concealable weapon. The defendant, who came within that class, was handed a weapon at a party to use against some belligerent intruders. The trial judge refused to give an in-

---

[5] A contrary result in this narrow fact situation would constructively serve neither society nor the individual under disability. Such a result would infringe on the ability of an individual affected by R. C. 2923.13 to find gainful employment as well as restrict the right of an owner of a shop to protect his life and property. The possible rehabilitative effects of gainful employment on the individual under disability outweigh any argument to further restrict what are, in reality, already difficult opportunities for employment.

struction on self-defense. On review, the Court held that the statutory right to self-defense was not overcome by the statute prohibiting the possession of a concealable weapon. The Court then concluded that the use of such a weapon not theretofore possessed by the defendant for the purpose of self-defense is neither a crime nor an unlawful purpose. *People* v. *King,* 23 Crim. Law Report 2525 (September 20, 1978).

Recognizing the duty of this Court to construe Ohio statutes to be constitutional where logically possible, *see Washington Court House* v. *McStows* (1976), 45 Ohio St. 2d 228, 230, R. C. 1.47 and R. C. 1.49, we believe that the affirmative defense of self-defense must be available to the defendant in the case at bar.

We therefore hold that the prohibitions of R. C. 2923.21 do not restrict the right of an individual under disability from acting in self-defense, when he did not knowingly acquire, have, carry or use a firearm previously.

Accordingly, the judgment of the trial court is reversed and remanded for a factual determination of self-defense.

*Judgment reversed*
*and cause remanded.*

PARRINO, P. J. and STILLMAN, J., concur.