THE STATE OF OHIO, APPELLEE, *v.* PAULEY, APPELLANT.

(No. 44886—Decided December 23, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Philip J. Korey,* for appellant.

DAY, P.J. Defendant-appellant, Glen W. Pauley ("defendant"), was indicted on June 5, 1981, in case No. 164297, for carrying a concealed weapon (R.C. 2923.12). On July 23, 1981, defendant was indicted again in case No. 165674 for carrying a concealed weapon (R.C. 2923.12) and for having a weapon while under disability (R.C. 2923.13).

The cases were consolidated and tried before a jury after pretrial motions to suppress were overruled. The jury returned a verdict of not guilty to the charges of carrying concealed weapons. Defendant was found guilty of having a weapon while under disability.

For the reasons adduced below the conviction is affirmed.

## I

Several federal Drug Enforcement Administration ("DEA") agents were patrons of a downtown Cleveland bar on June 23, 1981. One of the agents recognized defendant in the bar from a photo which had appeared in the newspaper the day before. As defendant sat down in a booth the agent saw a protrusion from the small of defendant's back. Based on his experience, the agent concluded that the protrusion was a gun. He reported his observation to several fellow agents. One of them contacted the Cleveland Police Department. Three police officers arrived at the bar, were briefed by the DEA agents, and approached defendant. Defendant was asked to step into the lobby of the bar and there a police officer patted the protrusion. Discovering a loaded Smith and Wesson nine millimeter automatic, the officer arrested defendant.

Defendant claimed he carried the weapon for self-protection. He had been an armed robbery victim and in his employment as a union organizer he and his associates had received many threatening telephone calls. The trial court instructed the jury on the affirmative defense of self-defense in connection with the concealed weapons charge under R.C. 2923.12(C)(1) and (2). The court refused to give a similar instruction on the charge of having a weapon while under disability.

## II
### Assignment of Error No. I

"The trial court erred in overruling the appellant's motion to suppress in that the police did not have reasonable articulable suspicion to conduct an investigative stop and frisk of the appellant."

The DEA agent stood only five or six feet away from the backside of defendant. He spotted what looked like a gun in defendant's waistband underneath his untucked shirt. From his fifteen years' experience as a law enforcement officer, the agent determined that the protrusion had the size, outline, shape, and location of a handgun. The agent testified unequivocally that he saw, not an amorphous or nondescript bulge, but a weapon.[1] The ar-

---

[1] The trial court ruled that the agent's written report completed at the time of the in-

cident was not discoverable to the defense because the agent neither used it to refresh his

resting Cleveland police officer testified that he could not see or otherwise determine the bulge was in fact a gun until he frisked defendant. However, both the agent and the officer testified that they conversed upon the officer's arrival at the bar. The officer inquired whether the agent was positive about his observation and the agent answered in the affirmative.

The issue under this assignment does not turn simply upon facts activating the right to stop and frisk. Those facts are described in *Terry* v. *Ohio* (1968), 392 U.S. 1, 30-31 [44 O.O.2d 383]:

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken."

In contrast the circumstances of this case bring the officers' actions within the classic definition of "probable cause." For here:

" '[T]he facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar* v. *United States* (1949), 338 U.S. 160, 175-176.[2]

The officers had probable cause to believe a crime was in progress. Their belief was a justifiable inference from their observations and their experiences.

The arrest and incidental search were within constitutional limits.

Assignment of Error No. I is without merit.

### III

Assignment of Error No. II

"The trial court erred in not instructing the jury that in a charge of carrying a weapon while under disability it is an affirmative defense for a person so charged to carry a weapon for defensive purposes as outlined in Ohio Revised Code Section 2923.12(C)(1) and (2); the failure to so instruct was an unconstitutional denial of appellant's right of self-defense."

R.C. 2923.12(C) sets out the conditions under which self-defense may be an affirmative defense to a charge of carrying a concealed weapon. There is no comparable statutory defense provided for persons under disability.[3]

---

recollection nor testified inconsistently with it. The defense moved to have the report made part of the record for appellate review. The report describes "a large protusion [which] could be seen under his shirt in the small of his back which looked like a gun butt." No error is predicated upon the use or non-use of the statement.

[2] *Brinegar* is an automobile case. This takes nothing from the general application of the definition of "probable cause."

[3] *State* v. *Hardy* (1978), 60 Ohio App. 2d 325 [14 O.O.3d 289], is not dispositive of the issues in this case. For the facts in *Hardy* were quite different. There the defendant, while under disability, and employed in a beverage store, was the victim of a robbery. To stop the aggressor-armed robber the defendant seized a rifle (to which all employees had access) and shot the robber. *Id.* at 325-326. The *Hardy* court found that prior to firing the gun the defendant lacked the type of possession of the gun contemplated by the disability statute. *Id.*

R.C. 2923.12 limits the availability of the affirmative defenses to an "actor not otherwise prohibited by law from having the weapon." But R.C. 2923.14 provides the conditions for relief from the weapon carrying disability. The defendant introduced no evidence that he received or even sought relief under the statutory scheme. This omission alone might be sufficient to rebut the claim that the defendant was deprived of a constitutional right by the failure to charge on the affirmative defenses in connection with the disability count. However, there is a more fundamental rebuttal. There is no constitutional right to carry concealed weapons (see discussion under IV, *infra*).

Assignment of Error No. II is without merit.

## IV

### Assignment of Error No. III

"The legislative classification under Ohio Revised Code Section 2923.13(A)(2) prohibiting a person under indictment for any felony of violence from knowingly carrying a firearm violates the Fourteenth Amendment's Due Process Clause in that it infringes upon defendant's fundamental right to bear arms as guaranteed by the Ohio Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution."

The notion that there is a personal right to carry concealed weapons that is a fundamental right under the United States and Ohio Constitutions has been repeatedly and emphatically rejected, *Lewis* v. *United States* (1980), 445 U.S. 55, 65-66, fn. 8[4]; *Mosher* v. *Dayton* (1976), 48 Ohio St. 2d 243, 247-248 [2 O.O.3d 412]; *State* v. *Fant* (1977), 53 Ohio App. 2d 87, 90 [7 O.O.3d 58]. Considering a section of the Omnibus Crime Control Act[5] that parallels some of the objectives in R.C. 2923.13, the United States Supreme Court said the "concept of equal protection" required only that the legislative classification have some rational basis or relevance to the purpose for which the classification was created. *Lewis, supra,* at 65.

Defendant's exact contention regarding the unconstitutionality of R.C. 2923.13 was repudiated in *Fant, supra,* at 90.[6]

Assignment of Error No. III is without merit.

---

at 328. *Hardy* holds only that a person under disability is not prevented from "acting in self-defense, when he did not knowingly acquire, have, carry or use a firearm previously." *Id.* at 330. Moreover, the *Hardy* weapon was not concealed. (A typographical error occurs at page 330 of *Hardy*. There the disability statute is cited as R.C. 2923.21.)

[4] "8. These legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they entrench upon any constitutionally protected liberties. See *United States* v. *Miller,* 307 U.S. 174, 178 (1939) (the Second Amendment guarantees no right to keep and bear a firearm that does not have 'some reasonable relationship to the preservation or efficiency of a well regulated militia'); *United States* v. *Three Winchester 30-30 Caliber Lever Action Carbines,* 504 F.2d 1288, 1290, n. 5 (CA 7 1974); *United States* v. *Johnson,* 497 F.2d 548 (CA 4 1974); *Cody* v. *United States,* 460 F.2d 34 (CA8), cert. denied, 409 U.S. 1010 (1972) (the latter three cases holding, respectively, that § 1202(a)(1), § 922(g), and § 922(a)(6) do not violate the Second Amendment)."

[5] Section 1202(a)(1) of the Omnibus Crime Control and Safe Streets Act, now codified at Section 1202(a)(1), Title 18, U.S. Code Appx., makes it a federal criminal offense for a person who has been convicted of a felony to receive, possess, or transport a firearm. See, also, Sections 922(g) and (h), Title 18, U.S. Code (disability while under felony indictment).

[6] The facts in *Fant* make a stronger case than the facts here because Fant's weapon was found in his residence. *Fant, supra,* at 88.

## V

The judgment is affirmed.

*Judgment affirmed.*

CORRIGAN and JACKSON, JJ., concur.