Defendant-appellant, Federico Escoto, was tried before a jury on two counts of felonious assault, one count of attempted murder, and one count of possession of a dangerous ordnance. He was found not guilty of the two counts of felonious assault and the one count of attempted murder, apparently on the basis of self-defense. He was found guilty of possession of a dangerous ordnance with a harm specification and sentenced accordingly, his sentence is to be served concurrently with a sentence he was serving for violation of a federal offense.
 Defendant appeals, asserting the following assignments of error:
"First Assignment of Error
 "The trial court erred by instructing the jury that, under the particular circumstances of this case, self-defense does not apply to a charge of unlawful possession or use of a dangerous ordnance or to the 'cause harm' specification appended to the dangerous ordnance charge.
"Second Assignment of Error
 "When defense counsel failed to request a self-defense instruction on the dangerous ordnance charge, defendant was denied the effective assistance of counsel.
"Third Assignment of Error
 "The destruction of the alleged dangerous ordnance prior to trial denied defendant his right to due process.
"Fourth Assignment of Error
 "The trial court erred by permitting the prosecution to conduct a demonstration designed to prove an element of the offense given the lack of similar circumstances and the absence of a limiting instruction to the jury."
In March 1989, Moises Cardenas rented a house at 2118 Indianola Avenue, located in Columbus, Ohio. Low on money, Cardenas decided that he would sublet part of the house to defendant, his wife and baby boy. Defendant and his family moved in but stayed only about a week.
On April 7, 1989, Cardenas told a friend that a suspicious package had arrived from Florida addressed to the Escotos. Cardenas' friend contacted the Columbus police who was told by Cardenas that Escoto was coming to the house to pick up the package and the rest of his property that was left on the premises. The Columbus police sent two narcotics officers to the location. They awaited the arrival of Escoto. The officers testified that two or three hours later, they heard a loud bang at the door like someone had kicked in the back door and a loud argument ensued between the intruder and Cardenas. Shortly thereafter, they heard the sound of a shell being pumped into the chamber of a shotgun. They drew their service revolvers; the testimony conflicted as to who fired first, but there is no doubt that defendant fired a shot at Officer Ely striking him in the face. A couple shots were fired by Sergeant Stanley missing defendant although apparently one shot struck the shotgun abandoned by defendant who then managed to escape. Defendant left the country and it was about eight years later when he was apprehended and brought to trial. The only issues in this appeal concern defendant's possession and use of the shotgun.
The evidence is undisputed that defendant obtained possession of a shotgun and that he carried it in a flower box into the premises when he arrived to pick up his package and possessions. Defendant claimed that he obtained the shotgun in order to protect himself against a dangerous person named Morales who had threatened his life. When he entered the premises, he said that Cardenas appeared to be afraid and that he feared that other people were in the house intending to kill him. When he saw the plain clothed officers with their guns drawn, and a shot was fired at him, he said that he then attempted to kill them to save his life.
We will first deal with assignments of error three and four which concern the proof that the shotgun which defendant possessed and used constituted a dangerous ordnance as defined by R.C. 2923.11. R.C. 2923.11(K)(1) defines "dangerous ordnance" to include a sawed-off firearm which is defined as "a shotgun with a barrel less than eighteen inches long * * * or a shotgun or rifle less then twenty-six inches long overall." R.C. 2923.11(F).
The state produced substantial evidence that the shotgun had a barrel less than eighteen inches long. Detective Cordial said that the barrel of the shotgun which defendant abandoned on the kitchen floor was "whipped off or cut off." He said that he found a ruler at the scene and measured the weapon and that the barrel was about sixteen inches long and that the entire shotgun measured thirty to thirty-one inches. The shotgun was sent to the crime laboratory and examined by Richard Fischer, an expert employed by the police department crime lab, for firearm identification. The parties stipulated to the report of the examination. The results of the examination, as pertinent, are the shotgun was sawed off thirty-one inches in overall length with a fifteen and one-half inch barrel. A photograph of the shotgun, at its location on the kitchen floor of the premises, while indeterminate, fits that description. According to the undisputed testimony of Lieutenant Casto, the shotgun was mistakenly destroyed.
In Arizona v. Youngblood (1988), 488 U.S. 51, at 57-58,109 S.Ct. 333, 337, the United States Supreme Court addressed a state's failure to produce evidentiary material which, after testing, might have exonerated the defendant and held that this failure did not violate defendant's due process rights, stating as follows:
 "The Due Process Clause of the Fourteenth Amendment, as interpreted in Brady, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."
Since there was no bad faith shown on the part of the police in the mistaken destruction of the shotgun, there was no violation of defendant's due process rights.
Defendant's third assignment of error is overruled.
In his fourth assignment of error, defendant objects to the demonstrative evidence by Lieutenant Cordial in describing the sawed-off shotgun that he observed at the scene of the crime. Lieutenant Cordial used his own shotgun of the same make, but without a sawed-off barrel, for demonstration purposes at the trial. The jury was specifically told that the shotgun was his own, but he used it to demonstrate the appearance of the shotgun carried by appellant to help them understand the evidence. The use of demonstrative evidence of this type is within the discretion of the trial court. The trial court did not abuse its discretion. Arguably, demonstration of an actual shotgun could help the jury understand how the shotgun could be fitted into a flower box to carry it onto the premises.
Defendant did not request a limiting instruction and there is no indication that an instruction repeating the witness's testimony that use of this weapon was for demonstrative purposes only would have been helpful.
Defendant's fourth assignment of error is overruled.
The legal issue presented by defendant's first and second assignments of error is whether, under the circumstances of this case, an instruction on self-defense applies to unlawful possession of a dangerous ordnance. The circumstances of this case were that defendant intentionally gained possession of a dangerous ordnance (a sawed-off shotgun), and possessed it for the admitted purpose of using it to protect himself in the event that Morales or somebody employed by him might attempt to kill him. Defendant deliberately carried the sawed-off shotgun onto the premises concealed in a florist box and he deliberately removed it from the box and searched the house fearful that a dangerous person or persons might be there. This was not a situation where defendant used a weapon that was handy and not possessed by him when an emergency circumstance arose. He carried a dangerous ordnance into a situation that he considered to be fearful. He continued that same attitude after he was in the house and feared that somebody might be there. He cocked the weapon and explored the premises intending to use it if necessary. Under these circumstances, defendant was not entitled to a self-defense instruction on the charge of possession of a dangerous ordnance.
Defendant relies upon State v. Hardy (1978), 60 Ohio App.2d 325, where the Cuyahoga County Court of Appeals found that a self-defense instruction is appropriate when the defendant did not knowingly acquire, have, carry or use a firearm previously. In Hardy, the defendant was under disability and not possessing a weapon but grabbed a gun during a robbery to protect himself. The similar circumstance in this case may have been if defendant was confronted by persons intending to kill him and he had grabbed Cardenas' sawed-off shotgun from the kitchen counter, not having brought it into the premises or had possession of it before, and used it. As noted in State v.Fryer (1993), 90 Ohio App.3d 37, 45, "the so-called self-defense exception to the charge of carrying a weapon while under disability is an extremely narrow exception." The exception does not apply to this case.
Analysis of the elements of self-defense further demonstrate that it was not available to the possession of a dangerous ordnance charge (if available at all in the case). InState v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus, the court stated that to establish self-defense, the defendant must show: " * * * (1) [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he had] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * *"
In this case, defendant was acting unlawfully in possessing the sawed-off shotgun. He created the situation giving rise to the affray, his only means of escape was not the use of force as he could have left the premises, and he did not attempt to retreat or avoid the danger.
Trial counsel was not ineffective for failing to request an instruction on self-defense to the charge of possession of a dangerous ordnance nor was he ineffective for failing to object to a jury instruction omitting that instruction since self-defense was not an applicable defense to the offense.
Defendant's first and second assignments of error are overruled.
Defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT, J., concurs.
TYACK, J., concurs separately.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.