This appeal comes to us from a judgment of the Lucas County Court of Common Pleas. There, appellant was convicted of possessing a dangerous ordnance and possessing a weapon while under disability. Because we conclude that the convictions were supported by sufficient evidence, as well as by the manifest weight of the evidence, we affirm.
At approximately 5:00 on the morning of March 12, 1998, two police officers responded to a domestic violence report at 627 Greenwood Avenue, Toledo, Ohio. They stood outside the dwelling for a few moments and heard screaming. As they were about to knock at the back door, appellant, Herman Galindo, came out of the house. He then accompanied the police officers back inside.
The officers questioned appellant and his girlfriend about the disturbance in the kitchen. While doing so, the police remembered stopping the couple several weeks earlier for a traffic violation. Although they did not issue a ticket, the police recalled that appellant had given them a different name.
The officers noticed an empty box of shotgun shells on the kitchen table. They asked appellant and his girlfriend whether there were any weapons or shotguns in the house. Both replied "no".
One of the officers continued to question appellant's girlfriend about what had prompted the domestic violence report. While she was being questioned, appellant walked from the kitchen into the dining room. Appellant stood in front of a large opening, or "pass through" window. This was in the dining room above a kitchen counter, approximately three feet away from the doorway between the two rooms.
The officers observed appellant ostensibly retrieve a note pad from the other side of the opening. They also watched him briefly bend down below the opening. One officer testified that he heard a dull noise from that area. Appellant returned to the kitchen with the note pad.
One of the officers then checked the area where appellant had been. He found a sawed-off 16 gauge shotgun on the floor in the area where appellant had been standing. The officer asked who the gun belonged to. Neither appellant nor his girlfriend replied. The officer then secured the shotgun by opening it to make sure it was not loaded with ammunition.
His partner immediately patted appellant down. He found five shotgun shells in appellant's pants pocket. The officer handcuffed appellant.
While the officers were checking for warrants, appellant told them that the gun was not his. Appellant told them that it belonged to his girlfriend's "son", Josh. However, upon questioning, Josh denied knowing whose gun it was or anything about the gun. The officers eventually learned there was an outstanding warrant to arrest appellant for a parole violation. Appellant's girlfriend was also arrested because of outstanding warrants.
On March 23, 1998, appellant was indicted for possession of a dangerous ordnance, a violation of R.C. 2923.17(A) and (D)[1] and a fifth degree felony. He was also indicted for having a firearm while under disability because of a 1988 drug abuse conviction. The second count, also a fifth degree felony, was a violation of R.C. 2923.13(A)(3).[2]
The case was tried to a jury on May 27 and 28, 1998. The parties stipulated that the sawed-off shotgun was a dangerous ordnance as defined in R.C. 2923.11(K)(1). They also stipulated that because appellant had been previously convicted of a drug offense, he was under disability for purposes of R.C.2923.13(A)(3). The state presented forensic evidence to show that the shotgun was operable.
Both arresting officers testified about their March 12, 1998 observations. Appellant's counsel emphasized that not only had the police failed to test for fingerprints, they had destroyed any prints by securing the shotgun at the scene. The officers acknowledged that appellant had claimed the gun belonged to his girlfriend's son.
Appellant presented Joshua Browning as his sole defense witness. Browning testified that Josh Patton (who is the nephew, not the son of appellant's girlfriend) had shown him the sawed-off shotgun n his bedroom at 627 Greenwood before appellant was arrested. On cross-examination, Browning stated that Patton showed him the gun sometime around the end of February to mid-March 1998 — a time period he could easily recall because his cousin's birthday was March 13, the day after appellant was arrested.
The jury convicted appellant on both counts. On June 16, 1998, the trial court sentenced appellant to serve ten months in prison for possessing a dangerous ordnance, and eight months for having a weapon while under disability. The court ordered appellant to serve the sentences consecutively.
Appellant has presented his appeal pro se, setting forth the following assignment of error:
"FIRST ASSIGNMENT OF ERROR
 THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT SUPPORTED BY SUFFICIENT PROBATIVE EVIDENCE."
Although presented as a single assignment of error, appellant raises the following specific issues:
 "1.) A verdict is against the manifest weight of the evidence when no creditable (sic) evidence is presented by the prosecution to show possession of the shotgun on the date charged in the indictment."
 "2.) A verdict is not supported by sufficient probative evidence, (sic) when no evidence is presented by the prosecution tending to show control by the appellant over the shotgun on the date charged in the indictment."
In his statement of facts, appellant presents a substantially different version of the events on March 12, 1998 than what was presented at trial. Many of appellant's "facts" are not included in the record. An appellate court can only review matters which were part of the proceedings of the trial court and cannot review matters added to the record for the first time on appeal. SeeState v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus; Celestino v. Scheider (1992), 84 Ohio App.3d 192,197.
Thus, we will first determine whether sufficient evidence exists in the record and trial transcript to support the "possession" element of each of the charges. Then, we will determine whether the manifest weight of the evidence supports the jury's determination that appellant possessed the shotgun. "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997),78 Ohio St.3d 380, 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. The relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Appellant argues that because there was no testimony showing that appellant was ever seen with the shotgun, and because possession cannot be inferred merely because he was on the premises of his girlfriend's house unless he was a resident, there was insufficient evidence to prove that he had or possessed the shotgun.
In order to "have" a firearm or ordnance within the meanings of R.C. 2923.17 and R.C. 2923.13, a person must actually or constructively possess the weapon. See State v. Hardy (1978),60 Ohio App.2d 325, 327. Actual possession requires ownership or physical control. State v. Messer (1995), 107 Ohio App.3d 51, 56. Constructive possession means immediate access to the weapon.State v. Butler (1989), 42 Ohio St.3d 174, 176 (citation omitted). "Constructive possession exists when an individual exercises dominion and control over an object, even though the object may not be within his immediate physical possession." Statev. Messer, 107 Ohio App.3d at 56 (citation omitted).
In this case, there is sufficient evidence to indicate that appellant had, at a minimum, constructive possession of the shotgun on March 12, 1998. Shortly after denying that weapons were in the house, appellant furtively stood near the shotgun, which was hidden from the immediate view of the officers. This demonstrates appellant was aware of the weapon's presence and that he was in constructive possession of it. See State v. Reeves
(Nov. 6, 1998), Hamilton App. No. C-980127, unreported. When appellant's furtive conduct is combined with the ammunition found on his person, substantial evidence supports the conclusion that appellant was more than just coincidentally near the weapon because he was on the premises. See State v. Berger (Feb. 19, 1998), Cuyahoga App. No. 71618, unreported. When viewed in a light most favorable to the prosecution, the jury could reasonably infer that appellant knowingly possessed the shotgun.
Appellant's argument that someone else owned the gun and that there was no proof he was a resident of the house does not change our conclusion. Nor does his suggestion that R.C.2925.01(K) should be used to define possession mandate a different result. That statute precludes inferring possession of controlled substances because someone uses the premises where the substances are found and is, therefore, inapplicable to the facts of this case.
The jury was free to disbelieve the testimony of appellant's sole defense witness as to ownership of the gun. The police officers' testimony conflicted with that of the sole defense witness, Joshua Browning. According to the officers, Joshua Patton denied knowing of the gun when appellant was arrested. Further, the officers stated that appellant denied weapons were in the home and remained silent when asked who owned the shotgun. It was not until appellant was handcuffed for some time that appellant stated the gun belonged to Josh Patton. Where there is a dispute about facts, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In any event, while ownership may demonstrate actual possession, it does not mean another person cannot constructively possess it at the same time. "[T]wo persons can each have possession of a firearm." State v. Martinsons (June 17, 1998), Medina App. Nos. 2708-M 2713-M, unreported.
Appellant's possession of the shotgun did not rest solely on the fact that he was present on the premises of 627 Greenwood when the shotgun was found. His denial of weapons on the premises, combined with the furtive movements he made moments later into the area where the shotgun was found and his possession of ammunition, exceeds "mere presence." Further, it is not necessary to be a resident to possess a weapon at someone else's home. See State v. Cummings (Feb. 9, 1999), Medina App. No. 2824-M, unreported (person who threw gun through the window of another's home actually possessed the gun where a matching holster and ammunition were found in his car).
Accordingly, sufficient evidence supported appellant's convictions for possessing a dangerous ordnance and possessing a weapon while under disability.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins, 78 Ohio St.3d at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. We will reverse the conviction and order a new trial only if the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice. Id.
Upon a review of all the evidence in this case, we cannot find that the jury clearly lost its way. As evaluated for purposes of sufficiency of the evidence, the inferences to be drawn from appellant deliberately going to the area where the shotgun was subsequently found (whether he owned it or not) shortly after denying weapons were on the premises, shows knowledge of the shotgun's existence. Appellant's possession of shotgun ammunition reveals access to and possession of the shotgun.
Accordingly, the manifest weight of the evidence supported appellant's convictions for possessing a dangerous ordnance and possessing a weapon while under disability.
All issues raised by appellant are found not well-taken. Accordingly, appellant's sole assignment of error raising those issues is found not well-taken.
The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Melvin L. Resnick, J.
 _______________________________ James R. Sherck, J.
 _______________________________ Richard W. Knepper, J.
CONCUR.
[1] R.C. 2923.17(A) provides, "No person shall knowingly acquire, have, carry, or use any dangerous ordnance."
[2] R.C. 2923.13(A)(3) provides, "Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *"