Appellant-defendant Demetrius Conwell appeals from his convictions in the Summit County Court of Common Pleas on one count of aggravated assault with a firearm specification and one count of having a weapon under a disability. This Court affirms.
On the afternoon of May 18, 1998, Conwell was at his home on East Avenue in Akron, Ohio. At some point, a close friend came to his house and told him that he had stolen approximately $8,000 worth of cocaine. Two of the people who were allegedly connected with the stolen cocaine walked by Conwell's house and observed the discussion between Conwell and his friend. Soon thereafter, Conwell's friend left, and Conwell went into his house.
Around 4:30 p.m., Conwell heard four car doors slam shut outside. He retrieved a pump shotgun, placed it just inside his front door, and went out onto his porch. He saw four men, who stood on the steps of his porch, and a brown car in his driveway. Another man, Eric Humphrey, sat on a motorcycle in the driveway. The men inquired as to whether Conwell's friend was there, and Conwell said that he was not present. The four men and Conwell had some discussion as to whether Conwell was lying.
What occurred after that point was contested at trial. One of the four men testified that Humphrey and Conwell began talking back and forth, with Conwell coming down to the driveway and the pair circling around as they argued. The witness said that Conwell then said that he had something for the men, ran back into the house, and retrieved the shotgun. The witness denied that any of the men had a gun. Conwell testified that Humphrey was shouting for the other men to shoot up the house and that Conwell was involved in the theft of the cocaine. Conwell admitted that he and Humphrey had words, but maintained that he never left the porch. Conwell said that when he heard the click of a gun being cocked, he retrieved the shotgun from inside the house.
When Conwell brought out the shotgun, the four men fled to the car. Conwell testified that after the men entered the car, he saw two of them with guns. He fired the shotgun into the air and pumped the shotgun to reload. The car then swiftly exited the driveway. Humphrey remained in the driveway.
Conwell descended his porch steps. He testified that he saw Humphrey with his back turned and that he could not see what Humphrey was doing. At that time, Conwell punched Humphrey in the face, and Humphrey fell over his motorcycle and onto the ground. Conwell then saw the car with the other four men returning, so he stood on the street and aimed the shotgun at the car, which turned onto a side street. Humphrey grabbed Conwell from behind. In response, Conwell struck him in the neck with the butt of the shotgun, and Humphrey fell to the ground again.
The car attempted to return to the scene a second time, and Conwell again aimed the shotgun at the car. The car responded as before, turning down another street. Conwell shouted for a neighbor to call the police. Conwell turned around to discover Humphrey in front of him. Conwell then struck him in the head with the butt of the shotgun again, and Humphrey went down. Humphrey tried several times to raise himself, but each time Conwell kicked Humphrey's arm out from under him and he fell to the ground again. This continued until the police arrived a short time later and took Conwell into custody.
Conwell was indicted on one count of felonious assault. The indictment was later amended to add one count of aggravated assault and one count of having a weapon under disability. Each charge carried a firearm specification. Conwell pleaded not guilty to the charges.
A jury trial was held January 19-21, 1999. Prior to trial, the trial court dismissed the firearm specification accompanying the count of having a weapon under disability. At trial, Conwell did not contest his actions toward Humphrey but instead asserted that his actions were the product of self-defense. After deliberating, the jury found Conwell not guilty of felonious assault but guilty of having a weapon under disability and of aggravated assault, with the accompanying firearm specification. The trial court sentenced him accordingly.
Conwell timely appeals, asserting three assignments of error.
 Assignment of Error No. I THE VERDICTS RETURNED BY THE JURY OF GUILTY FOR AGGRAVATED ASSAULT AND HAVING A WEAPON UNDER DISABILITY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 In his first assignment of error, Conwell argues that his convictions for aggravated assault and for having a weapon under disability are against the manifest weight of the evidence. This Court disagrees.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 Aggravated Assault
Conwell first argues that his conviction for aggravated assault against Humphrey is against the manifest weight of the evidence. He does not attack the evidence supporting any of the elements of the offense; rather, he argues that he proved that he acted in self-defense.
A defendant who asserts the affirmative defense of self-defense has the burden of proving the matter by a preponderance of the evidence. State v. Martin (1986), 21 Ohio St.3d 91, syllabus, affirmed (1987), 480 U.S. 228, 94 L.Ed.2d 267. See, also R.C. 2901.05(A). In cases involving deadly force and self-defense,
 the following elements must be shown: (1) the [defendant] was not at fault in creating the situation giving rise to the affray; (2) the [defendant] has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the [defendant] must not have violated any duty to retreat or avoid the danger.
 State v. Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. However, in the case of non-deadly force, "[o]ne may use such force as the circumstances require in order to defend against danger which one has good reason to apprehend." State v. Fox (1987), 36 Ohio App.3d 78, 79. See, also, State v. Williford (1990), 49 Ohio St.3d 247, 249
("The defendant is privileged to use that force which is reasonably necessary to repel the attack."). It must also be noted that "[t]here is no duty to retreat from one's home." Id. at paragraph two of the syllabus.
In the case at bar, Conwell's testimony demonstrated that he believed that there was impending danger, even to the level of apprehension of death or great bodily harm by gunfire, when he could not see what Humphrey was doing.[1] However, after he struck Humphrey with his fist, Conwell could ascertain that Humphrey was not armed with a weapon. When Humphrey continued to come after him, Conwell still did not see a weapon in Humphrey's possession. In spite of this fact, Conwell struck Humphrey twice in head and neck area with the butt of a shotgun and kicked Humphrey's arm out from under him several times to keep him prone. A neighbor of Conwell testified that Humphrey was bleeding profusely by this time.
The testimony before the jury demonstrated that once Conwell had ascertained that Humphrey was not wielding a weapon, the use of a shotgun to batter Humphrey and the repeated assault on the prone and wounded Humphrey exceeded the force necessary to abate the danger of an assault. As such, the jury did not clearly lose its way by rejecting Conwell's claim of self-defense. The conviction for aggravated assault was not against the manifest weight of the evidence.
 Having a Weapon Under Disability
Conwell also argues that his conviction for having a weapon under disability is against the manifest weight of the evidence. He contends that he did not know that he was prohibited from possessing a firearm. He also contends that he proved self-defense with respect to that charge.
Under R.C. 2923.13(A), "[u]nless relieved from disability as provided in [R.C. 2923.14], no person shall knowingly acquire, have, carry, or use any firearm" if certain conditions that constitute a "disability" apply. One of these conditions is that "[t]he person * * * has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence." R.C. 2923.13(A)(2). Felonious assault, a violation of R.C. 2903.11, is a "felony offense of violence." R.C. 2901.01(A)(9)(a).
First, Conwell contends that he did not know that he could not possess a firearm, despite the fact that he had been adjudicated delinquent as a juvenile for felonious assault. This Court has held that a defendant need only possess a weapon while under an existing disability; the prosecution is not required to prove that the defendant had knowledge of the disability. Statev. Quiles (Feb. 3, 1993), Lorain App. No. 92CA005316, unreported. In the case at bar, the state met its burden and proved that Conwell possessed a firearm while under disability for his delinquency adjudication.
Second, Conwell argues that he proved that he was acting in self-defense and was therefore insulated from criminal liability. In support of his argument, he cites State v. Hardy (1978),60 Ohio App.2d 325.
Hardy is inapplicable to this case.[2] In Hardy, the court held that the statute prohibiting the possession of a weapon while under disability "do[es] not restrict the right of an individual under disability from acting in self-defense, when hedid not knowingly acquire, have, carry or use a firearmpreviously." (Emphasis added.) Id. at 330. Conwell's own testimony clearly showed that he purchased the shotgun far in advance of the events that occurred on May 18, 1998.
Conwell's convictions for aggravated assault and for having a weapon under disability are not against the manifest weight of the evidence. The first assignment of error is overruled.
 Assignment of Error No. II THE MISCONDUCT OF THE PROSECUTOR VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 Conwell argues in his second assignment of error that the prosecutor asked improper questions and made improper comments during his cross-examination. His argument is not well taken.
This Court notes that, with one exception, Conwell did not object to the questions at issue. Therefore, as to those questions, this Court can only take notice of the error if it rises to the level of plain error. See Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order for this Court to apply Crim.R. 52(B), it must be clear that the outcome of the trial would have been different but for the alleged error. State v. Lane (1995), 108 Ohio App.3d 477, 482. See, also, Statev. Wade (1978), 53 Ohio St.2d 182, paragraph one of the syllabus, vacated on other grounds (1978), 438 U.S. 911, 57 L.Ed.2d 1157.
The first exchange concerned involved Conwell's prior record as a juvenile:
 Q. But as a juvenile, you were convicted of felonious assault?
A. As a juvenile, yes.
Q. That was a felony, right?
A. Right.
 Q. Felonious assault. I mean, that is the same — essentially the same charge that you are charged with now?
A. Yes.
 (Emphasis added.) Conwell contends that the prosecutor's question was improper because it was intended to demonstrate that he had a propensity for committing felonious assault. However, this Court discerns no plain error. Conwell was in fact found not guilty of felonious assault, and it cannot be said that, but for the prosecutor's question, the outcome of the trial would have been different.
The second exchange was in response to a line of questioning on direct examination about a criminal case in 1995 involving Conwell. In that case, the same trial judge presided over the trial, Conwell had the same attorney, and the same prosecutor represented the state. In the 1995 case, Conwell was also charged with having a weapon under disability and was found not guilty. The trial court allowed the prosecutor to question Conwell on whether he knew that he was under a disability from possessing a firearm:
 Q. But there has been an incident since [Conwell's juvenile adjudication], hasn't there, where you have had to think about this issue?
A. Oh, yes.
 Q. And you, in fact, in this very court have previously been charged with having a weapon under disability, haven't you?
A. That's true.
* * *
 Q. And you were charged with illegally possessing a gun because of your juvenile conviction, and that was back in January of 1995?
A. But I was acquitted.
* * *
Q. You remember being charged with it, right?
A. Yes.
 Q. You were told that it is against the law for you to possess a gun?
A. I was not told that.
* * *
 Q. You were served an indictment and you were charged with many different things?
A. Many different things.
 Q. Right. And they involved having a gun in the commission of a crime?
A. Yes.
 (Emphasis added.) Conwell argues that these questions implied to the jury that he had a propensity for criminal behavior but did not address his knowledge of the disability.
This Court concludes that the two questions at issue in this second exchange do not constitute plain error. The reference to "many different things" does not elaborate as to what the other charges may have been; there is no particular suggestion that the other offenses of which he was acquitted were serious in nature. The record does not demonstrate that the result of the trial would have been different absent these questions.
The third and final exchange occurred on further cross-examination after re-direct:
 Q. * * * And the other incident that you denied being involved in, you were accused of having a gun in that other incident, though, weren't you?
A. Yes.
 Q. Right. People came in and testified and said you had a gun, right?
A. Yes.
 Q. And that was a drug rip-off? That was the allegation in that case, right, that you ripped off a drug dealer?
[Conwell's attorney]: Objection, Your Honor.
THE COURT: Sustained.
 (Emphasis added.) Conwell asserts that the prosecutor's questions attempted to imply to the jury that he was somehow involved in the theft of drugs in this case.
As to the first question at issue, this Court again concludes that no plain error occurred. With regard to the second question, "[t]he test for prosecutorial misconduct is whether [the prosecutor's conduct was] improper and, if so, whether [the conduct] prejudicially affected substantial rights of the accused." State v. Lott (1990), 51 Ohio St.3d 160, 165. The ultimate issue is whether the defendant was deprived of a fair trial. See State v. Apanovich (1987), 33 Ohio St.3d 19, 24. The alleged misconduct must be evaluated in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402, 410.
Conwell objected to the question, and the trial court sustained the objection. Conwell did not request a curative instruction. Viewing the trial as a whole, this Court is of the opinion that the question, while improper, did not deprive Conwell of a fair trial.
None of the questions asked by the prosecutor amounted to plain error or deprived Conwell of a fair trial. Accordingly, the second assignment of error is overruled.
 Assignment of Error No. III DEFENDANT-APPELLANT'S CONVICTION FOR HAVING A WEAPON UNDER DISABILITY WAS BASED ON A DISABILITY FROM WHICH APPELLANT WAS RELIEVED, PURSUANT TO R.C. 2923.14. APPELLANT'S CONVICTION AS TO THIS CHARGE IS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL AND PLAIN ERROR.
 In his third assignment of error, Conwell argues that his trial counsel was ineffective. He contends that he was relieved of his disability under R.C. 2923.13 when the juvenile court sealed his felonious assault adjudication. According to Conwell, because the juvenile court record has been sealed, he has been relieved of his disability.
To support this argument, Conwell attached to his brief before this Court a printout from the Summit County Court of Common Pleas, Juvenile Division, which states:
 The individual you were inquiring about [Conwell] has no previous record at our court. * * *
* * *
 The only record we have available is a traffic record that is attached. If indeed there was a felonious assault on his record it would have to been sealed [sic]. On what date is impossible to know because the record is deleted from our files when it is sealed.
 This evidence is not part of the record transmitted from the trial court. As such, this Court is precluded from considering it here.[3] See Blosser v. Carter (1990), 67 Ohio App.3d 215, 220. The third assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
 Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 _____________________________________ DONNA J. CARR FOR THE COURT
BATCHELDER, P.J. and SLABY, J. CONCUR
[1] The evidence demonstrated that Humphrey had been previously convicted of carrying a concealed weapon, in violation of R.C.2923.12, and of a federal offense involving a possession of a machine gun and transporting a firearm. Humphrey was on parole from a federal prison when these events occurred.
[2] This Court notes that the self-defense exception to R.C.2923.13 found in Hardy has never been explicitly recognized in this district. See State v. White (Apr. 5, 1989), Summit App. No. 13850, unreported.
[3] Even assuming arguendo that the evidence was properly before this Court, Conwell still would not have shown ineffective assistance of counsel under Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674, 693, and State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. The evidence presented in support of Conwell's argument states, at most, that Conwell's juvenile delinquency adjudication was sealed, presumably under R.C. 2151.358. However, the only manner of relieving a defendant of a disability that is set forth by statute is found in R.C. 2923.14. Conwell has not presented any authority supporting the proposition that the sealing of a defendant's juvenile record also relieves the defendant of any disability imposed by R.C.2923.13. Because the proposition asserted by Conwell is debatable at best, his trial counsel would not have been ineffective for failing to pursue that argument before the trial court.