[Cite as *State v. Booker*, 2025-Ohio-2595.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO, :

    Plaintiff-Appellee, :

                             No. 114521

    v. :

SHERITA Q. BOOKER, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 24, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-688564-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mikayla Ortiz, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant*.

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant Sherita Q. Booker ("Booker") appeals her convictions for having a weapon while under disability ("HWWUD") and improperly

handling a firearm in a motor vehicle. She raises the following assignments of error for review:

> **Assignment of Error I:** There was insufficient evidence produced at trial to support a finding of guilt on all counts.

> **Assignment of Error II:** The trial court sitting as fact-finder lost its way by finding the defendant guilty against the manifest weight of the evidence.

{¶ 2} For the reasons set forth below, we affirm Booker's convictions.

## I. Facts and Procedural History

{¶ 3} The matter before us is a reindicted case in which Booker was charged with HWWUD and improperly handling a firearm in a motor vehicle resulting from a traffic stop in Middleburg Heights on May 28, 2022.[1] The following evidence was presented at a bench trial.

{¶ 4} Middleburg Heights police officer Nicholas Spronz ("Officer Spronz") testified that on May 28, 2022, around 9:00 p.m., he conducted a traffic stop on the entrance ramp to Interstate-71 from Bagley Road. He observed Booker, who was driving an Audi SUV, run a red light on Bagley Road. Officer Spronz was wearing his body camera at the time, and video of the traffic stop was played for the court. In the video, Officer Spronz can be observed approaching the Audi SUV and asking Booker for her driver's license and proof of insurance. Booker handed Officer Spronz her license, showed him her proof of insurance, and told Officer Spronz that the car was a private rental. Officer Spronz testified that Booker's license check

---

[1] Both Counts 1 and 2 included a forfeiture-of-a-weapon specification.

came back as suspended. As a result, Officer Spronz could not allow Booker to drive the vehicle home and asked her to exit it so it could be towed. According to Officer Spronz, officers typically do an inventory of the vehicle prior to the tow.

{¶ 5} In the video, Officer Spronz can then be observed asking Booker, who was standing at the side of the road at this point, if there was anything on her person or in the car he should know about before allowing Booker to get her cell phone. Booker replied, "[M]y husband's gun is in there and I meant to take it out." (State's exhibit No. 3.) Booker then said that the gun "is in the glove compartment" and "it actually [belongs] to my stepfather, it's his gun." (State's exhibit No. 3.) Booker said that the glove compartment was "locked" and she also had some marijuana in the car. (State's exhibit No. 3.) However, Booker can then be observed opening the glove compartment without using a key showing Officer Spronz where the firearm was located. Officer Spronz can be observed removing the cartridge, which appeared to be loaded and removing a bullet from the chamber. Officer Spronz testified that Booker would have been able to reach the firearm from the driver's seat. The firearm was determined to be loaded and was later tested and found to be operable.[2]

{¶ 6} Booker and her stepfather Curtis Watkins ("Watkins") testified for the defense. Watkins testified that he borrowed Booker's car the night of the incident. According to Watkins, the gun that was found in the SUV was his. On the

---

[2] The parties stipulated that Booker had prior conviction for drug possession that disabled her from having a firearm.

day in question, Watkins testified that around 7:30 p.m. he drove Booker's vehicle to the store and placed the gun in the glove compartment. Afterwards, he came back home and returned the vehicle back to Booker, forgetting that his firearm was still in the glove compartment. Approximately 30 minutes later, he realized that he did not have his gun. Watkins called Booker and told her that he left his firearm in the glove compartment. Booker told him that she was going to bring it back to him.

{¶ 7} Booker testified that on the day in question she gave Watkins her keys so he could go to the store. When Watkins returned home, he returned the keys to her. Booker left at that point to return to the hotel room she was renting. She stopped at the gas station on her way to the hotel room. Booker acknowledged that she knew the gun was in the glove compartment once Watkins contacted her around 8:15-8:30 p.m., and that she was not allowed to have a gun. Watkins told her "the gun is in the car, I forgot to take it out of the glove compartment; when you get a chance, bring it back." (Tr. 60.) Booker told him that she would call him back but she "never made it to the hotel room for [her to even] call [Watkins] and say come and get [your] gun." (Tr. 60.) Approximately an hour later, Booker was pulled over for running the red light. According to Booker, she did not know her driver's license was suspended because she was "renting a car and in order for you to rent these cars your license [has] to be valid." (Tr. 53.)

{¶ 8} Following the conclusion of trial, the court found Booker guilty of both counts, ordered her to forfeit the gun, and sentenced her to a total of two years of community-control sanctions.

{¶ 9}   It is from this order that Booker appeals, raising two assignments of error for review.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 10} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). An appellate court's function when reviewing sufficiency is to determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 11} With a sufficiency inquiry, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Thompkins* at 386.

{¶ 12} In *State v. Jones*, 2021-Ohio-3311, the Ohio Supreme Court cautioned:

> But it is worth remembering what is not part of the court's role when conducting a sufficiency review. It falls to the trier of fact to "'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" [*State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316,

¶ 24], quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's "credibility or effect in inducing belief." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. Instead, it asks whether the evidence against a defendant, if believed, supports the conviction. *Thompkins* at 390 (Cook, J., concurring).

*Id*. at ¶ 16.

{¶ 13} In the first assignment of error, Booker argues there was insufficient evidence to support her convictions for HWWUD and improperly handling a firearm in a motor vehicle. She contends that the State's own witnesses failed to establish the fundamental elements of the crimes charged.

{¶ 14} In order to convict Booker of HWWUD, the State was required to present evidence beyond a reasonable doubt that Booker "knowingly acquire[d], ha[d], carr[ied], or use[d] any firearm or dangerous ordnance, if . . . [Booker] . . . has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]" R.C. 2923.13(A)(3). To convict Booker of improperly handling a firearm in a motor vehicle, the State was required to present evidence beyond a reasonable doubt that Booker "knowingly transport[ed] or ha[d] a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." R.C. 2923.16(B).

{¶ 15} Booker argues the evidence was insufficient because of the absence of the following: (1) "knowledge" — essentially she claims that she did not have "actual

knowledge" of the gun, but rather assumed it was in the glove compartment of the vehicle because she never physically opened the glove compartment to check for it after Watkins told her that he left it in the car; (2) "dominion and control" — Booker claims that she never had possession of the gun because she never physically handled it; and (3) "ready at hand" — Booker asserts that the gun was not "ready at hand" or conveniently accessible. The State counters that (1) the Ohio Revised Code does not require "actual knowledge" and that knowledge of a fact can be based on the circumstances surrounding the situation; (2) Booker had constructive possession over the gun, and as the driver of the vehicle, the gun was within arm's reach and in her control; and finally (3) "ready at hand" is not a requirement under statute. We find the State's arguments more persuasive.

### 1. Knowledge

{¶ 16} A person acts knowingly

> when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶ 17} Booker argues she did not genuinely know that there was a gun in the car because she never confirmed if the gun was actually in the glove compartment by opening it to verify what Watkins told her. Instead, she claims she took Watkins's

words at face value, assumed there was a gun, and relayed that information to the police.

{¶ 18} Contrary to Booker's assertions, "actual knowledge" is not required. R.C. 2901.22(B) states that knowledge of a fact can be based on circumstances and knowledge can be established "if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B). This is precisely what the evidence demonstrates in the matter before us.

{¶ 19} Watkins called Booker around 8 p.m. and told her that he accidentally left his gun in the glove compartment of her vehicle. The moment Watkins told Booker is the moment she had knowledge of the gun in the glove compartment. She did not need to verify if the firearm was actually in her vehicle. Booker's own testimony confirms that she believed that the firearm was in the glove compartment when Watkins called her. Booker testified:

> [STATE]: So you knew the gun was in the glove compartment –
>
> [BOOKER]: When he contacted me, yes.

(Tr. 59.) Booker further testified:

> [STATE]: So you're at the gas station and you chose to get back in the car knowing the gun was in the glove compartment?
>
> [BOOKER]: Yes, because I had to get home.

(Tr. 61.)

{¶ 20} Additionally, the body-camera video demonstrates Booker's knowledge of the gun. When asked by Officer Spronz if there was anything on her

person or in the car he should know about before allowing Booker to get her cell phone, Booker replied, "[M]y husband's gun is in there and I meant to take it out." (State's exhibit No. 3.)  Booker then said that the gun "is in the glove compartment" and "it actually [belongs] to my stepfather, it's his gun."  (State's exhibit No. 3.)  In the video, Booker said that the glove compartment was "locked" and can then be observed opening the glove compartment by only pressing a button and showing the officer where the firearm was located.

{¶ 21} It is clear from Booker's own words and actions that she had knowledge of the gun in her vehicle.

## 2. Dominion and Control

{¶ 22} Booker next argues the State failed to introduce any evidence that she actually exercised any dominion or control over the gun itself.  In support of her argument, she cites to two cases — *State v. Duganitz*, 76 Ohio App.3d 363 (8th Dist. 1991), and *State v. Hardy*, 60 Ohio App.2d 325 (8th Dist. 1978) — for the proposition that the evidence in the instant case was insufficient to demonstrate that she exercised dominion and control over the gun.

{¶ 23} In *Duganitz*, the appellant, who was the driver of a vehicle, was convicted of carrying a concealed weapon.  After a traffic stop, the police found a gun in the car, under a blanket between the driver's and passenger's seat.  On appeal, this court reversed the conviction, finding that

> the record does not contain any direct evidence of Duganitz's ownership, possession, or control of the weapon.  The extent of the circumstantial evidence, in this case, is first that the appellant exited

the car quickly. The appellant was the driver of the car. He allegedly made a statement that he was in the area to buy some crack cocaine. The time was approximately five o'clock a.m. The appellant also denied ownership of the weapon. The weapon was found in a place in the car accessible to both the appellant and passenger.

*Id.* at 369-370.

{¶ 24} In reaching its decision, the *Duganitz* Court relied on *Hardy*. In *Hardy*, the appellant was convicted of HWWUD. The appellant was an employee at a beverage store, who was approached by another employee. This employee claimed that he needed money for rent. The appellant informed the employee that he would give him an advance at the end of the day. Thereafter, an altercation between the two of them ensued that resulted in the appellant picking up a rifle located in the corner and wounding the employee. On appeal, the *Hardy* Court found that appellant did not "have" the weapon prior to the point when he grabbed it. This court reasoned that

> [i]n order to "have" a firearm, one must either *actually* or *constructively* possess it. Actual possession requires ownership and, or, physical control. Constructive possession may be achieved by means of an agent.

> The facts in the case at bar demonstrate only that appellant, along with other employees, had knowledge of and physical access to a loaded rifle. The record fails to disclose any evidence demonstrating that appellant ever exercised dominion or the sort of control over the weapon that comes with ownership or actual possession. Nor was there a showing that the unidentified owner had ever given appellant permission to use the weapon.

(Emphasis in original.) *Id.* at 327.

{¶ 25} In footnote 3, the *Hardy* Court expounded on its rationale, stating:

The record does not contain any direct evidence of ownership, possession or control of the weapon by the appellant. The extent of the circumstantial evidence is contained in a statement made by appellant to the police in which he admitted knowledge that the rifle was "always ready to fire." This evidence, however, is insufficient on which to base a finding that the weapon was actually or constructively possessed by the appellant. There are other reasonable explanations for knowledge concerning the readiness of the rifle for firing; *e.g.*, he could have been informed of this fact by the store owner, or he may have seen the owner or other employees use the weapon.

It may well be that if further evidence had been adduced, the prosecutor could have developed a case establishing that appellant "had" the weapon. However, with the record in this posture, such a conclusion is not the only reasonable inference which could be drawn.

*Id.*

{¶ 26} We find these cases distinguishable. Unlike in *Duganitz* and *Hardy*, there is sufficient evidence in this case to find that Booker had constructive possession of the gun. Constructive possession may be established by demonstrating that

the defendant was able to exercise dominion or control over the items, even though the items may not be within the defendant's immediate physical possession. *State v. Wolery* (1976), 46 Ohio St.2d 316, 348 N.E.2d 351; see, also, *State v. Brown*, 8th Dist. No. 87932, 2007 Ohio 527, ¶ 7, citing *State v. Hankerson* (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus; *State v. Messer* (1995), 107 Ohio App.3d 51, 56, 667 N.E.2d 1022. Constructive possession may also be inferred when a person has dominion or control over the premises upon which the object in question is found and knows that the object is on those premises. *State v. Scalf* (1998), 126 Ohio App. 3d 614, 710 N.E.2d 1206. Further, a person may knowingly possess or control property belonging to another; the state need not establish ownership to prove constructive possession. *See State v. Robinson*, 8th Dist. No. 90751, 2008-Ohio-5580.

Moreover, circumstantial evidence alone is sufficient to support a finding of constructive possession. *State v. Mason* (July 5, 2001), 8th Dist. No. 78606, 2001 Ohio App. LEXIS 3019, citing *Jenks*, supra.

*State v. Bray*, 2009-Ohio-6461, ¶ 23-24 (8th Dist.); *see State v. Long*, 2005-Ohio-5344, ¶ 17 (8th Dist.)("Ohio courts have routinely held that constructive possession can be established by the fact that a defendant had access to a weapon and had the ability to control its use."), citing *State v. Thomas*, 1996 Ohio App. LEXIS 4545 (11th Dist. Oct. 11, 1996); *State v. Williams*, 1997 Ohio App. LEXIS 4467 (10th Dist. Sept. 30, 1997); *State v. Wolery*, 46 Ohio St.2d 316 (1976) (holding that physical possession or ownership of the weapon is not necessary, and mere access to a weapon can establish guilt). Moreover, whether a person "knowingly acquired, had, carried, or used any firearm or dangerous ordnance 'is to be determined from all the attendant facts and circumstances available.'" *Bray* at ¶ 21, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶ 27} After applying these standards, the facts establish that Booker had constructive possession of the gun found in the car she was driving. Contrary to Booker's assertions, her own testimony establishes that she knew that the gun was in the glove compartment of the car. In addition, Officer Spronz's testimony established that the gun was easily accessible from the driver's seat. Although Booker stated that the glove compartment was locked, according to Officer Spronz, the glove compartment opened with the touch of a button on the dashboard and Booker would have been able to reach the gun "[f]rom the driver's seat[.]" (Tr. 28.)

{¶ 28} Taking all of these circumstances into account: (1) Booker knew the gun was in the vehicle after Watkins called her; (2) that the glove compartment was within arm's reach; and (3) the gun was easily accessible through the touch of a

button, Booker exercised dominion and control over the gun and had constructive possession of it.

### 3. Ready at Hand

{¶ 29} Lastly, Booker argues that the gun was not "ready at hand" because the gun was in the glove compartment, which required pressing a button on the dashboard. In support of her argument, Booker relies on *State v. Miller*, 2003-Ohio-6239 (2d Dist.) "Ready at hand," however, is not a requirement under either statute, and the *Miller* case Booker cites involves elements for a completely different offense — carrying a concealed weapon. Therefore, we find Booker's arguments regarding "ready at hand" misplaced.

{¶ 30} When viewing the foregoing evidence in a light most favorable to the State, any rational trier of fact could have found that Booker knew of the gun and had constructive possession of the gun, which was found in her glove compartment. The evidence admitted at trial, if believed, supported her convictions for HWWUD and improperly handling a firearm in a motor vehicle.

{¶ 31} Therefore, the first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 32} In the second assignment of error, Booker argues the trial court lost its way because she made the decision to refrain from even touching the gun in the glove compartment, much less exercising any dominion over it.

{¶ 33} In contrast to a challenge based on sufficiency of the evidence, a manifest-weight challenge attacks the credibility of the evidence presented and

questions whether the State met its burden of persuasion at trial. *State v. Whitsett*, 2014-Ohio-4933, ¶ 26 (8th Dist.), citing *Thompkins*, 78 Ohio St.3d 380; *Bowden*, 2009-Ohio-3598, ¶ 13 (8th Dist.).

{¶ 34} In our manifest-weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder, and not a jury:

> Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41 citing *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.). *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

*State v. Crenshaw*, 2020-Ohio-4922, ¶ 22-24 (8th Dist.).

{¶ 35} Neverthelss, a conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 36} This is not the exceptional case in which the evidence weighs heavily against the conviction. The trial court, as the factfinder, heard Booker's own testimony that she knew the gun was in the glove compartment, heard Officer Spronz's testimony that the gun was easily accessible, observed the traffic stop from Officer Spronz's body-camera footage, and found Booker guilty of both counts. We cannot say that the trial court lost its way.

{¶ 37} Therefore, the second assignment of error is overruled.

{¶ 38} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KATHLEEN ANN KEOUGH, J., CONCUR